**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**FORT MYERS DIVISION**

In Re FRANCO GATTO,

        Debtor.

___

KELLY GATTO,

        Appellant,

vs.                                                                          Case No. 2:12-cv-483-FtM-UA

FRANCO GATTO,

        Appellee.

___

**ORDER**

This appeal from an order of the bankruptcy court is before the Court on the following:

1.    Appellant's Brief (Doc. 5), filed September 17, 2012;

2.    Appellee's Brief (Doc. 8), filed September 27, 2012; and

3.    Appellant's Reply Brief (Doc. 10), filed October 9, 2012.

Upon consideration, the Court hereby affirms the bankruptcy court's order, for the reasons set forth below.

**BACKGROUND**

Franco and Kelly were husband and wife. (Doc. 9-2, Hr. Tr. 9:16–22.) They met, dated, and married while living in New York. (*Id.* 8:9–10, 9:16–22.) They divorced in 1992 in New York, but continued to live together. (*Id.* 14:7–15:4.) They moved to Tennessee, purchased a house, and continued to live together. (*Id.* 15:3–20, 16:6–12.) In 2008, Franco and Kelly had a falling out, and they decided to unwind their joint

household. (*Id.* 16:6–12, 17:12–14.) Franco decided to move to Florida while Kelly intended to remain in the house they jointly owned. (*Id.* 17:15–23.) While he was preparing to move, Kelly presented Franco with several documents, all of which he signed before he left. (*Id.*)

One of those documents was a Property Dissolution Agreement ("PDA"). (Doc. 1-18.) The recitals to this agreement noted that Franco and Kelly "began living together in 1985,"[1] had "been living in the same house hold since," but had "decided to go their separate ways." (*Id.* at 1.) The recitals also state that Franco and Kelly had disclosed to one another all of their separate and joint assets and liabilities, and that they desired to "settle and adjust" their respective rights with regard to those assets and liabilities "arising out of their relationship." (*Id.*)

Under the PDA, Franco and Kelly agreed to pay equal shares of the house's mortgage, home warranty, and repair costs. (*Id.* at 2–3.) Kelly received ownership and possession of one car while Franco retained sole ownership of a second car that was to remain in Kelly's possession. (*Id.* at 3.) Franco agreed to pay Kelly a sum certain "for credit card expenses, medical bills, household bills, [and] maintenance of pool, home, [and] food," plus an equal share of an enumerated list of debts and obligations. (*Id.* at 4–6.) Franco also agreed "of his own free will" that his interest in a worker's compensation claim was to be paid to Kelly until she is paid "the money that is owed to her." (*Id.* at 4.) The PDA also contained a "non-dischargeability" provision that provided:

> With respect to each party's responsibility for payment of certain debts and liabilities, and their obligation to hold the other harmless for payment thereof, the parties understand and agree that their obligation is not a dischargeable debt under the bankruptcy code, this obligation being part of the final financial support settlement for both parties.

---

[1] The parties did not, however, actually meet until 1989. (Hr. Tr. 28:23–25.)

(*Id.* 7–8.) The PDA also contains other sundry provisions that are not relevant to this appeal.

Franco evidently defaulted, and Kelly brought a breach of contract suit against him in Tennessee. (Hr. Tr. 19:1–9, 33:17–20.) Franco did not respond to Kelly's lawsuit, and the Tennessee court entered a default judgment against him. (*Id.* 19:17–19, 33:17–25.)

Franco subsequently filed for bankruptcy in Florida, seeking to discharge his obligations under the PDA and the default judgment. (*Id.* 27:24–28:2.) Kelly opposed the discharge, arguing that the PDA was a "domestic support obligation" that is not dischargeable under the bankruptcy code. (*Id.* 47:11–49:21.) The bankruptcy court concluded, after reviewing the requirements of 11 U.S.C. § 101(14A), that the PDA was not a domestic support obligation because it was not "in the nature of alimony, maintenance, or support of a former spouse." (*Id.* 56:12–58:9.) Kelly appealed the decision of the bankruptcy court. (Doc. 1-1.)

## STANDARDS

Whether a pre-petition debt is a domestic support obligation under federal law is a legal conclusion that is reviewed *de novo*. *In re Strickland*, 90 F.3d 444, 446 (11th Cir. 1996). Under 11 U.S.C. § 523(a)(5), a bankruptcy court must determine if the obligation at issue is "actually in the nature of alimony, maintenance, or support." *Strickland*, 90 F.3d at 446. This is "a simple inquiry as to whether the obligation can legitimately be characterized as support, that is, whether it is in the nature of support." *Id.*

## DISCUSSION

Kelley contends the bankruptcy court erred when it concluded that the PDA was

3

not a non-dischargeable domestic support obligation. (Doc. 5., pp. 6–13; Doc. 10, pp. 8–6.) Franco argues that the bankruptcy court's decision was correct. (Doc. 8, pp. 5–8.)

To determine whether a pre-petition debt is a domestic support obligation, a bankruptcy court looks "beyond the label the parties have given to a particular debt" and "determine[s] whether the debt is actually in the nature of alimony or support." *Cummings v. Cummings*, 244 F.3d 1263, 1265 (11th Cir. 2001). The court may also consider: (1) state law; (2) the agreement's language; (3) the parties' financial positions when the agreement was made; (4) the amount of division; (5) whether the obligation ends upon death or remarriage; (6) the frequency or number of payments; (7) the waiver of other support rights; and (8) how the agreement is treated for tax purposes. *Id.*

Here, the bankruptcy court correctly concluded that the PDA was what it purported to be: an agreement unwinding Franco's and Kelly's shared property and debts. The parties were not married at the time they entered into the agreement, and had not been married for more than a decade preceding the agreement. As noted by the bankruptcy court, the PDA is not considered a separation agreement under Tennessee law. The PDA did not purport to waive or enforce other rights of support, nor did it evince by its language or provisions to be a settlement related to the parties' former marriage. Further, when judged by its timing or by Kelly's choice to enforce the agreement by bringing a breach of contract lawsuit in Tennessee rather than contempt proceedings in New York, it is clear that the PDA was not linked in any way with the parties' divorce. This Court therefore agrees with the bankruptcy court and finds that the PDA was not a non-dischargeable domestic support obligation.

**CONCLUSION**

Accordingly, it is hereby **ORDERED AND ADJUDGED** that the bankruptcy court's order is **AFFIRMED**. The Clerk is directed to close this case.

**DONE AND ORDERED** in Chambers in Fort Myers, Florida, on May 3, 2013.

ROY B. DALTON JR.
United States District Judge

Copies:
Counsel of Record